[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter comes to the Superior Court originally having been brought in the state of New York, and having been dismissed after pending there for several years. The history of these parties is that they were both residents of the state of New York. They were married in New York on September 27, 1986. As a result of that marriage, there was one child born to them, Victoria Golub, born CT Page 3253 on August 05, 1989. There were no other children issue of this marriage, no assistance from the state or any municipality, and the evidence produced at trial shows that the marriage of the parties has broken down irretrievably.
The principal issue involved in this matter is that of the custody and visitation of the minor child. The issue of custody, while normally a very complicated one, is even more so in this case due to the history of the parties, and the ongoing animosity and behavior that controls this case. The child was placed in foster care at the early age of three months in the state of New York. Judging by the testimony of the parties, it appears as if neither party was particularly well prepared to have a child, and they both had difficulties in coping with the demands of a young child. After returning from her initial foster care placement, the child was removed again at approximately nine months of age and placed in foster care for the second time.
A long and detailed history follows these incidents. Suffice it to say that the parties' relationship, their mutual care of the child, as well as this trial was marked by manipulation, lying, vindictiveness, hostility, and what can best be described as guerrilla warfare. The extensive evidence presented by both parties has served to convince the court of the extent of hatred that the parties continue to have for one another, and to further convince the court that the welfare of the child is not necessarily in the forefront of either parent's thought process. If it were infinitely more articulate, the court could not possibly describe the extent of the animosity that exists between these parties. No detail, however insignificant, was spared in an attempt to bring the other party into an unfavorable light. Most of the testimony offered was not offered for the purpose of aiding the court in making a determination as to custody but was offered for the purpose of portraying the inadequacies of the other party. Those aims have been successfully accomplished.
That being said however, the facts as they presently exist are that the child does reside in the state of Connecticut with the mother and with the mother's boyfriend named Gary Gross. He has three sons of his own, who also reside in that same household. They have lived together since approximately 1995, which was when the mother and child began residence in the state of Connecticut. Mr. Gross describes his relationship with Mrs. Golub as well as with Victoria as appropriate, and that his children also get along well with the minor child. Mrs. Golub indicates an CT Page 3254 intention to marry Mr. Gross, and if she does, that would be her fourth marriage. She had told the guardian ad litem for the minor child on a previous occasion that she did not intend to marry Mr. Gross. It was Mr. Gross's observation that the child has improved in terms of her behavior, attitude and adjustment at school.
The child is currently enrolled at the Beecher Road School, an elementary I school in Woodbridge, and is receiving appropriate educational instruction, including special education. There were a number of teachers called to testify as well as a school psychologist. On or about February 10, 1999, a group of teachers were concerned enough about the child to write a letter to the Family Relations Office in response to an inquiry sent in preparation of a custody evaluation and report. That letter expressed concerns as to the child's academic progress, her tendency toward isolation, her lack of interaction with other students, and generally conveyed the impression that the child was telling stories that were "rehearsed", that is, influenced by the mother. The child's adjustment to school at this time is generally good.
The last significant contact between the child and her father was in August of 1995. At that time, the parties were still living in New York and there was some regular frequency of visitation. By that time, Mr. Golub was living with Ms. Deborah Santagata, with whom he still lives. It is reported by both Mr. Golub and Ms. Santagata that the child got along well with Mr. Golub and with her children at that time. The last visit recalled is August 5, 1995. According to Mr. Golub, he tried a number of times after that to continue to see his child without success. He testified that his subsequent attempts at visitation resulted in attempts at his seduction by his wife. He rejected those attempts and consequently did not see the child. Mrs. Golub on the other hand testifies that he never asked to see the child. There was no resolution as to the issue of visitation, despite the fact that there was an action pending in the New York courts. The most significant event that happened in the ensuing several years was an attempt as to what Mr. Golub describes as a service of a petition in the family court, and what Mrs. Golub describes as an attempt to take the child from her. That event took place on February 14, 1996 and it was the last time that Mr. Golub saw his child prior to seeing the child at Southern Connecticut State University's supervised visitation program years later.
In April of 1996 Mr. Golub was under the impression that Mrs. CT Page 3255 Golub was leaving for New Mexico with the child. He did take action in the New York court, and Mrs. Golub was allowed to move from New York, however, she was required to remain in the tri-state area. (See Plaintiff's Exhibit No. 25.) Mrs. Golub was already in the process of moving to Connecticut. The matter remained in the jurisdiction of New York until May of 1998 at which time a decision was rendered dismissing the action. (See Plaintiffs Exhibits Nos. 16, 17.) Shortly thereafter, an action was started here for a restraining order and the Connecticut court has had "jurisdiction of the matter since that time.
The time between August of 1995 and May of 1998 was marked by a series of skirmishes and battles between the parties. Mr. Golub testified that Mrs. Golub effectively kidnaped the child and hid the child from him during this period of time. Mrs. Golub in turn testified that Mr. Golub was involved in a campaign of harassing, stalking, and attempts to traumatize both her and the child. The culmination of Mrs. Golub's efforts in this regard were an appearance on the CBS Evening News in New York which portrayed Mr. Golub as a stalker. Mr. Golub for his part sent hundreds of notices to the Connecticut area indicating that his daughter had been kidnaped and those flyers were displayed throughout the area where Mrs. Golub and the child were living.
There were four attempted visitations which took place in January and February of 1999 at the Southern Connecticut State University Family Clinic between Mr. Golub and his child. The result of those attempts was essentially that the child refused to participate, and left the room after a brief visit in each case. It is clear from that incident as well as the school records and the recommendation of the psychologist that the child has been influenced to a great extent by the events of her young life, and by the continued actions of both parents. However, there is also compelling evidence to support the belief that supervised visitation is the only reasonable way to surmount the many issues presented here, and to support the view that it will ultimately be successful.
The marriage of the parties has been found to be irretrievably broken down, without hope of reconciliation. The jurisdictional requirements of the Connecticut General Statutes have been met (46b-44), and the court does have jurisdiction over this matter. The marriage of the parties is dissolved. The court has reviewed a separation agreement dated August 29, 1995 which has been entered into evidence and marked as plaintiff's Exhibit 1. The CT Page 3256 court finds credible that evidence which shows that the agreement was negotiated over a period of approximately one year, and that both parties were represented by counsel during both the negotiations and the execution of the agreement. The court finds that the agreement was fair and equitable at the time that it was entered into, and the court finds the agreement valid. The terms of that agreement shall be incorporated into the terms of this judgment, to the extent that they are not changed by the terms of this judgment, and to the extent that they are not against the public policy of the state of Connecticut.
After review of the appropriate statutory criteria, the court awards custody of the minor child to the plaintiff, Beth Golub. The issue of visitation shall be addressed by this order requiring that both parties attend the Southern Connecticut State University Marriage and Family Therapy Clinic. The parties are to attend by seeking counseling individually from the Southern Connecticut State University with clinicians working as a team. The clinicians providing therapy to the parties shall treat those parties individually without any expectation of privacy or privilege. Those clinicians shall be allowed to communicate with each other as to the progress of the individual therapy with a specific aim of facilitating visitation between Mr. Golub and the minor child. At the same time, the plaintiff shall provide counseling and/or therapy for the minor child as deemed appropriate. That counseling and/or therapy shall take place at the Southern Connecticut Marriage and Family Therapy Clinic or such facility as they may recommend. At such time as the therapist of the parties deem it appropriate that visitation is to take place, that visitation shall take place initially under the supervision and guidance of the Southern Connecticut Family Therapy Clinic. The parties shall each be responsible for their own individual cost of therapy. That portion of the child's therapy which is not paid or covered through the defendant's insurance coverage, shall be paid equally by the parties. The provisions of the separation agreement as to visitation shall be replaced by this order.
The defendant shall be restrained and barred from contacting the plaintiff by phone, mail or in person, at her home or place of business, or coming within 500 feet of her residence or place of employment under any circumstance. The defendant shall also be barred from contacting any employer, or medical provider of the plaintiff. CT Page 3257
Child support, medical insurance, arrears, and unreimbursed/uninsured medical expenses shall be paid in accordance with the Court's order of December 03, 1998. Those orders are found to be within the parameters set forth by the Child Support Guidelines. Child support shall be established and modified in accordance with the laws of the state of Connecticut. The court finds a present arrears of $256.00 and orders payment of that sum within 30 days of the date of this order. The provisions in the separation are deleted.
Robaina, J.